IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


DAVID EUGENE GRAHAM,
      Petitioner,

vs.                                          Case No.: 3:12cv55/MCR/EMT

MICHAEL D. CREWS,[1]
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 8). Respondent filed an answer and relevant portions of the state court record (doc. 17). The court provided Petitioner an opportunity to file a reply (*see* docs. 18, 20, 23), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

---

[1] Michael D. Crews succeeded Kenneth S. Tucker as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d).

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 17).[2]  Petitioner was charged in the Circuit Court in and for Santa Rosa County, Florida, Case No. 2008-CF-698, with one count of battery upon a law enforcement officer (Ex. B at 1).  A jury trial was held on February 26, 2009 (Ex. C).  The trial transcript shows that the offense occurred while Petitioner was an inmate of the Santa Rosa County Jail (*id.*).  Officer Kirkland, the victim in this case, testified he asked Petitioner to remove items he had placed on the window and the light in his cell (*id.* at 29–31).  Kirkland testified Petitioner responded he was not going to do "a damned thing," and if Kirkland wanted the items removed he could "do it [his] fucking self" (*id.* at 31–32).  Kirkland testified he entered Petitioner's cell, and as he walked to the window, Petitioner "kind of bumped into me with his shoulder as I was walking by" (*id.* at 32–33).  Officer Kirkland testified he told Petitioner to step back and proceeded to remove the items from the light and window (*id.* at 33).  He testified he began to walk back to the cell door and Petitioner "did a strong arm shoulder, kind of, hitting me with his shoulder" (*id.*).  Kirkland testified he again told Petitioner to step back, and Petitioner responded by cussing and stating he was going to "beat my ass" (*id.* at 33–34).  Kirkland testified he exited the cell and attempted to close the cell door, but Petitioner had jammed the runner of the door with small toothbrushes and paper (*id.* at 32–33).  Kirkland testified he attempted to scrape the items out of the door runner with his foot, and Petitioner began kicking his foot and hitting him on the arm (*id.* at 34).

Petitioner admitted during his testimony that he had covered his window with a blanket and his light with a shirt (Ex. C at 57–58).  He admitted Officer Kirkland asked him to remove the items and he refused, because he believed Kirkland was harassing him (*id.* at 58).  Petitioner admitted he placed toothbrushes and paper in the cell door after Kirkland told him to remove the items from the window and light (*id.* at 70).  Petitioner denied he ever touched Kirkland, and he testified he stepped aside when Kirkland entered his cell (*id.* at 59–60).  Petitioner testified Kirkland had difficulty closing the cell door, but Petitioner denied he ever had physical contact with Kirkland or otherwise physically restricted him from closing the door (*id.* at 61).  Petitioner also denied he used profanity

---

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

or threatened Kirkland (*id.* at 61, 66–67). Petitioner admitted he had previously been convicted of eleven (11) felonies (*id.* at 64).

The jury found Petitioner guilty as charged (Ex. B at 16, Ex. C). He was sentenced to four (4) years and eight (8) months of imprisonment, with pre-sentence jail credit of 297 days, to run consecutively to any active sentence he was then serving (Ex. A at 19–23, Ex. C at 111).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-1525 (Ex. F). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*). The First DCA provided Petitioner an opportunity to file a pro se initial brief (Ex. G), but Petitioner did not do so (*see* Ex. H). The First DCA affirmed the judgment per curiam without written opinion on May 14, 2010, with the mandate issuing June 9, 2010 (Exs. H, I). Graham v. State, 36 So. 3d 659 (Fla. 1st DCA 2010) (Table). Petitioner did not seek further review.

On June 28, 2010, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M at 1–32). In an order rendered September 8, 2010, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty (30) days (*id.* at 39–41). Petitioner filed an amended motion on September 29, 2010 (Ex. J at 100–29). The state circuit court summarily denied it on July 14, 2011 (Ex. M at 34–38). Petitioner appealed the decision to the First DCA, Case No. 1D11-4361 (Ex. O). The First DCA affirmed the judgment per curiam without written opinion on December 5, 2011, with the mandate issuing January 3, 2012 (Exs. Q, R). Graham v. State, 75 So. 3d 722 (Fla. 1st DCA 2012) (Table).

While the Rule 3.850 motion was pending, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D11-4064, alleging ineffective assistance of appellate counsel (*see* Ex. S). The First DCA denied the petition on the merits on August 26, 2011 (Ex. T). Graham v. State, 68 So. 3d 387 (Fla. 1st DCA 2011) (Mem.).

Petitioner filed the instant federal habeas action on January 30, 2012 (doc. 1). Respondent has not raised a statute of limitations defense (doc. 17 at 3–4).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[4] Section 2254 provides, in pertinent part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
　　　　(A) the applicant has exhausted the remedies available in the courts of the State; or
　　　　(B) (i) there is an absence of available State corrective process; or
　　　　　　(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

citing in conjunction with the claim the federal source of law on which he relies or a case deciding

such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This

language, while not part of the Court's holding, provides helpful instruction. With regard to this

language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for
> petitioners seeking to establish exhaustion. However, we agree with the district court
> that this language must be "applied with common sense and in light of the purpose
> underlying the exhaustion requirement[:] 'to afford the state courts a meaningful
> opportunity to consider allegations of legal error without interference from the
> federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting
> Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).
> This is consistent with settled law established by the Supreme Court. . . . We
> therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more
> than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation"

requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For

example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his

juror misconduct claims to the state courts where his brief to the state appellate court did not refer

to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited

in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003).

The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt

with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . .

.," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the

Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in

petitioner's state appellate brief were state supreme court cases that made no mention of the United

States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.  PETITIONER'S CLAIMS

Ground One:  "Ineffective assistance of counsel."

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner contends defense counsel was ineffective for failing to conduct any pretrial investigation or interview witnesses, and failing to file pretrial motions (doc. 8 at 4, 7).[8] He specifically alleges counsel failed to obtain a videotape and present it a trial (*id.* at 7). He asserts the videotape would have negated his guilt (*id.*).

Respondent contends Petitioner failed to demonstrate the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (doc. 17 at 17–21).

      1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on

---

[8] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." <u>Jones</u>, 436 F.3d at 1293 (citing <u>Strickland</u>, 466 U.S. at 690); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" <u>Id.</u> (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Professionally competent assistance includes a duty to conduct a reasonable investigation. <u>Strickland</u>, 466 U.S. at 690–91. The Court has emphasized that only when counsel's choices are made after a "thorough investigation of law and facts relevant to plausible options" are those choices "virtually unchallengeable." <u>Id.</u> at 690. When, however, "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." <u>Id.</u> at 690–91. Thus, at a minimum, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances . . . ." <u>Id.</u> at 691. This means that when the court assesses the attorney's decision not to investigate, the court "must consider . . . whether the known evidence would lead a reasonable attorney to investigate further." <u>Price v. Allen</u>, 679 F.3d 1315, 1323 (11th Cir. 2012) (quoting <u>Wiggins v. Smith</u>, 539 U.S. 510, 527, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." <u>Richter</u>, — U.S. — , 131 S.Ct. at 779.

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. <u>See</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not,

or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.       Federal Review of State Court Decision

Petitioner raised this claim as Ground 1 in his amended Rule 3.850 motion (Ex. J at 103–06, 112–18). He argued defense counsel should have requested that the State produce a videotape from a camera that monitored the housing area of the jail (*id.*). Petitioner asserted defense counsel was "obviously" aware of the existence of the videotape, as evidenced by counsel's statement to the jury during closing argument, "So the lack of evidence you can consider, no videotape" (*id.* at 103–04, 106).

The state circuit court adjudicated the claim as follows:

Defendant challenges his conviction of February 26, 2009, for battery on a law enforcement officer. At the time of the offense, Defendant was an inmate at the Santa Rosa County Jail and the victim was a correctional officer employed there. [Reference to excerpt from trial transcript]. At trial, it was established the officer entered Defendant's cell in order to remove a blanket from the window at the back of the cell and an item covering the light fixture. [Reference to excerpt from trial transcript]. The officer testified Defendant deliberately bumped him after the officer entered the cell and was about three feet into the cell, and Defendant again bumped him in the middle of the cell after the officer had removed the blanket and was moving toward the door. [Reference to excerpt from trial transcript]. The officer also testified Defendant kicked his [the officer's] foot and hit his arm while the officer was attempting to close the door. [Reference to excerpt from trial transcript]. The officer's efforts to close the door were hampered by two toothbrushes and some paper Defendant had placed in the door runner. [Reference to excerpt from trial transcript]. Defendant confirmed the officer entered the cell, removed the blanket from the window of the cell and had difficulty opening and closing the door because of the items Defendant had placed there. [Reference to excerpt from trial transcript]. However, Defendant denied having ever touched the officer. [Reference to excerpt from trial transcript].

In Ground 1, Defendant claims counsel was ineffective for failing to request or obtain a videotape that Defendant alleges would have shown the struggle between the officer and Defendant at the cell door never occurred.[FN 1: In his memorandum of law, Defendant makes some allegations as to counsel's inadequate pretrial investigation and failure to interview potential witnesses, which are facially sufficient [sic] and denied.] Defendant alleges it is clear from the record trial counsel was aware of the videotape from the camera that monitors the housing area. Defendant references counsel's statement during his closing argument pointing out a lack of a videotape of the incident. Defendant states it is common knowledge that video cameras are installed in jail and prisons throughout Florida, and he alleges there is nothing in the record that shows a videotape did not exist.

The record shows trial counsel submitted a discovery request to which the State responded there was no electronic surveillance evidence. [Reference to Discovery Exhibit]. During his closing argument at trial, counsel pointed out the absence of a tape for the jury to consider as a lack of evidence. [Reference to excerpt from trial transcript]. The State responded in its closing there was no evidence a videotape ever existed. [Reference to excerpt from trial transcript].

Defendant's allegations of the existence of a videotape and its contents and counsel's knowledge of it are speculative. By his own allegations, he is unaware of any specific video recording of the time and place of the incident in question. Rather, he bases the existence of a video on common knowledge and the fact that

counsel mentioned the absence of a video. Defendant alleges the tape was destroyed but fails to allege when it was destroyed or whether the tape was in existence at such a time that counsel would have been in a position to obtain it.[FN 2: Defendant was charged with committing the offense on April 3, 2008. The charging information was filed May 6, 2008, and counsel was appointed May 8, 2008.] Counsel cannot be found deficient where he made a request for discovery, was informed there was no electronic surveillance, and Defendant has failed to state something other than speculation to show a videotape ever existed.

Even if housing areas at the jail are under video surveillance, there is no showing activities inside the cell or at the door would have necessarily been recorded.[FN 3: In its response, the State acknowledges there is a surveillance camera in the jail but states it only records the dorm area and not the interior of the cell.] There were three different acts of battery upon the officer, two within the cell and another at the door as the officer was attempting to remove obstructions from the door and close it. Defendant's allegation there [was] a video recording of the incident at the door of his cell is mere speculation, and he fails to allege such a video captured the events or activities inside the cell.

Moreover, Defendant alleges video recording at the jail is common knowledge, and thus it could be presumed to be within his knowledge. However, at trial he showed no concern about a lack of a video when he testified or when he stated he was satisfied with his counsel's representation. [Reference to excerpt from trial transcript]. Nor does he allege he requested counsel to obtain video evidence from the jail.

Defendant also makes an allegation as to the tape's ability to show the location of the witness [Lieutenant Cottrell, the victim's supervisor]. Defendant alleges the witness was standing directly below the alleged incident. This matter is not an issue in that the witness testified he was on the lower floor at the time of the incident. [Reference to excerpt from trial transcript].

(Ex. M at 34–37). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion.

Petitioner has not shown that the state court applied a rule that contradicts Strickland, or that the facts were materially indistinguishable from a decision of the Supreme Court and the state court nevertheless arrived at a result different from Supreme Court precedent. Therefore, he failed to satisfy the "contrary to" standard of § 2254(d). *See* Lockyer, 538 U.S. at 73 Petitioner is thus not entitled to federal habeas relief unless he demonstrates the state court unreasonably applied Strickland in adjudicating his claim.

As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, 633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The state court record supports the circuit court's findings as to the substance of the testimony adduced at trial (*see* Ex. C). The record also supports the court's finding that defense counsel filed a notice of discovery pursuant to Rule 3.220 of the Florida Rules of Criminal Procedure, and the prosecutor responded by filing a Discovery Exhibit stating there had been no electronic surveillance, including wiretapping, of the premises of the defendant, or of conversations to which the defendant was a party, nor were there any documents relating thereto (*see* Ex. A, Case Progress Dockets, docket entry 05/28/2008; Ex. M at 73–75).[9]

---

[9] Rule 3.220 provides, in relevant part:

**(a) Notice of Discovery.** After the filing of the charging document, a defendant may elect to participate in the discovery process provided by these rules, including the taking of discovery depositions, by filing with the court and serving on the prosecuting attorney a "Notice of Discovery" which shall bind both the prosecution and defendant to all discovery procedures contained in these rules.
. . . .
**(b) Prosecutor's Discovery Obligation.**

(1) Within 15 days after service of the Notice of Discovery, the prosecutor shall serve a written Discovery Exhibit which shall disclose to the defendant and permit the defendant to inspect, copy, test, and photograph the following information and material within the state's possession or control:
. . . .
> (H) whether there has been any electronic surveillance, including wiretapping, of the premises of the defendant or of conversations to which the defendant was a party and any documents relating thereto; . . .

As the state court found, Petitioner's allegation that a videotape of the interaction between him and the victim existed is purely speculative. Contrary to Petitioner's argument, the fact that both defense counsel and the prosecutor referenced the absence of a videotape in their closing arguments does not suggest it ever existed. Further, defense counsel requested production of any electronic surveillance evidence, and the State responded that none existed. Petitioner does not allege facts suggesting defense counsel had actual knowledge or reasonably could have discovered knowledge clearly suggesting that a videotape of the incident existed or that counsel should not have reasonably relied upon the prosecutor's representation that no electronic surveillance evidence existed. Petitioner thus failed to show counsel unreasonably concluded that further efforts to discover a videotape were unnecessary. With regard to Petitioner's general allegation that counsel was deficient for failing to conduct any other pretrial investigation and file pretrial motions, Petitioner does not allege the existence of any other evidence that would have been helpful to the defense and that counsel could have or would have discovered it through further pretrial investigation. Further, he failed to specify any pretrial motion that counsel had a reasonable basis for filing. Therefore, he failed to satisfy the deficient performance and prejudice prongs of the Strickland standard with regard to Ground One.

Petitioner failed to demonstrate that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to habeas relief on Ground One.

B.     Ground Two: "Non-disclosed evidence."

Petitioner asserts the State violated Brady v. Maryland, 373 U.S. 83 (1963) by deliberately failing to disclose evidence favorable to the defense, specifically the alleged videotape discussed *supra* in Ground One (doc. 8 at 4, 8). He asserts the State offered no evidence of the reason for its failure to disclose the videotape, other than that it did not exist (*id.* at 8). Petitioner alleges the alleged videotape was "exculpatory and impeaching" (*id.*).

Respondent contends the state court's adjudication of Petitioner's claims was not contrary to or an unreasonable application of Brady (doc. 17 at 21–26).

_____

Fla. R. Crim. P. 3.220.

Case No.: 3:12cv55/MCR/EMT

1.      Clearly Established Federal Law

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In Strickler v. Greene, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999), the Supreme Court set out the following three components or essential elements of a Brady prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. at 281–82. Under the prejudice prong, the defendant must show that the suppressed evidence is material. See Strickler, 527 U.S. at 282. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United State v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d (1985).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 2 in his amended Rule 3.850 motion (Ex. J at 107, 119–22). He alleged it was "common knowledge" that video cameras were installed in jails and prisons throughout Florida, and the existence of the camera and videotape "could have easily been confirmed" (id. at 121). The state circuit court adjudicated the claim as follows:

> In Ground 2, Defendant alleges the tape was in the State's possession and control, the State suppressed the evidence, and the evidence was material in that it would show the officer's allegations as to a struggle at the door to be false. To the extent he is stating a Brady[FN 4: Brady v. Maryland, 373 U.S. 83 (1963).] claim, Defendant's additional allegation that counsel knew about a tape makes his claim legally insufficient. See Occhicone v. State, 768 So. 2d 1037, 1042 (Fla. 2000). His claim is also insufficient in that Defendant fails to address the impact of a tape on the offenses committed inside the cell. See Hunter v. State, 20 So. 3d 256, 270 (Fla. 2008).
>
> Moreover, as stated above, the existence of a videotape and its contents are based on speculation. Such speculation cannot support a Brady claim. See Overton v. State, 976 So. 2d 536, 52 (Fla. 2007); Gore v. State, 846 So. 2d 461, 467 (Fla.

2003) (where the defendant failed to present a factual basis that the alleged evidence
ever existed).

(Ex. M at 37).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed
the lower court's decision without written opinion.

Accepting as true Petitioner's allegation that a camera monitored the housing area at the jail,
he failed to provide any factual basis for his allegation that a videotape of the events occurring at
his cell door or in his cell existed.  *See, e.g.*, <u>Burgess v. Terry</u>, 478 F. App'x 597, 600 (11th Cir.
2012) (unpublished) (there can be no suppression of evidence, by the prosecution or anyone
connected to it, that does not exist at the time of trial or sentencing).[10]  Furthermore, Petitioner's
"common knowledge" awareness of the camera prior to trial, and his allegation that defense counsel
was "obviously" aware of a videotape (*see supra* Ground One), defeats his claim that the evidence
was suppressed for <u>Brady</u> purposes.  *See* <u>Maharaj v. Sec'y for the Dep't of Corr.</u>, 432 F.3d 1292,
1315 n.4 (11th Cir. 2005) (there is no suppression for <u>Brady</u> purposes if the defendant knew of the
information); <u>Chandler v. Moore</u>, 240 F.3d 907, 915 (11th Cir. 2001) (no <u>Brady</u> violation where
defendant could have possessed the evidence through the exercise of reasonable diligence); *see also,
e.g.*, <u>United States v. Michtavi</u>, 390 F. App'x 852, 854 (11th Cir. 2010) (unpublished); <u>Thomas v.
Tucker</u>, No. 5:11cv332/MMP/EMT, 2012 WL 4742804, at *16 (N.D. Fla. Aug. 10, 2012), *Report
and Recommendation Adopted by* 2012 WL 4760870, at *1 (N.D. Fla. Oct. 3, 2012).  Petitioner
failed to show that the State suppressed material evidence favorable to the defense.  Therefore, the
state court's denial of his <u>Brady</u> claim was not unreasonable.

C.     <u>Ground Three:  "Conviction was obtained by the action of a petit jury which was
unconstitutionally impaneled."</u>

Petitioner asserts the jury was impaneled in violation of his equal protection rights because
there were no "unprejudiced" African Americans for Petitioner to choose from during jury selection
(doc. 8 at 5, 9).  He states there was only one African American, but he should not have been
allowed to participate in the jury selection process, because he was a former correctional officer and

---

[10] The undersigned cites unpublished Eleventh Circuit cases only as persuasive authority and recognizes that
the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

former co-worker of the victim (*id.*).  Petitioner alleges neither the State nor the trial court offered

a race neutral explanation for the exclusion of African Americans from the jury pool (*id.*).

Respondent contends the claim is procedurally barred from federal review, because the state

court rejected it on an independent and adequate state procedural rule, namely, that the claim could

have or should have been raised on direct appeal, and any challenge to the composition of the jury

panel was waived because the defense raised no challenge during jury selection (doc. 17 at 8–9, 27).

Respondent additionally contends notwithstanding the procedural bar, Petitioner failed to establish

a constitutional violation with respect to the composition of the jury pool (*id.* at 27–33).

Petitioner raised this claim as Ground 3 in his amended Rule 3.850 motion (Ex. J at 108,

123–26).  The state circuit court adjudicated the claim as follows:

> In Ground 3, Defendant claims his conviction was obtained through a petit
> jury that was unconstitutionally impaneled.  He makes an allegation as to a juror
> questionnaire which is unclear.  Defendant further alleges he was not afforded the
> opportunity to choose from any unprejudiced African-American jurors and argues
> exclusion [of] blacks from juries is forbidden.  This claim is not cognizable in a rule
> 3.850 action in that it is the type of issue to be raised on appeal.  However,
> Defendant does not allege, and there is no showing, he made a challenge to the jury
> selection process pursuant to Florida Rule of Criminal Procedure 3.290.  Therefore,
> he waived any such claim.  *See Johnson v. State*, 268 So. 2d 544, 547 (Fla. 3d DCA
> 1972).

(Ex. M at 37).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed

the lower court's decision without written opinion.

Rule 3.850 provides, "This rule does not authorize relief based on grounds that could have

or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and

sentence."  Fla. R. Crim. P. 3.850(c).  A defendant may challenge the composition of the jury panel

at trial, pursuant to Rule 3.290 of the Florida Rules of Criminal Procedure, and on direct appeal of

his conviction.  *See* Fla. R. Crim. 3.290; Bryant v. State, 386 So. 2d 237 (Fla. 1980); Garcia v. State,

638 So. 2d 94 (1994); Hernandez v. State, 397 So. 2d 435 (1981); Barnason v. State, 371 So. 2d 680

(Fla. 3d DCA 1979).  A defendant who goes to trial without objecting to an irregularity in the

drawing, summoning, and impaneling of jurors waives any such challenge.  *See* State v. Silva, 259

So. 2d 153, 158 (Fla. 1972); Johnson v. State, 268 So. 2d 544, 547 (Fla. 3d DCA 1972).

The transcript of Petitioner's jury selection is part of the record (Ex. E). The transcript demonstrates that Petitioner made no challenge to the racial composition of the jury panel (*id.*). Therefore, he waived any such challenge. The state court's rejection of Petitioner's claim was thus based upon an independent and adequate state ground of procedural bar.

As previously discussed, to overcome a procedural default such that the federal habeas court may consider the merits of a claim, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Petitioner does not allege cause for his procedural default. Further, he failed to establish prejudice resulting from this court's failure to review the claim. Discriminatory selection of a jury venire may be challenged under the Sixth Amendment's requirement that the venire reflect a fair cross-section of the community. *See* Duren v. Missouri, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979); Taylor v. La., 419 U.S. 522, 526–31, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975). As the Supreme Court explained in Holland v. Illinois, the fair cross-section requirement is "not explicit in the text" of the Sixth Amendment, "but is derived from the traditional understanding of how an 'impartial jury' is assembled. That traditional understanding includes a representative venire, so that the jury will be . . . 'drawn from a fair cross section of the community.'" 493 U.S. 474, 480, 110 S. Ct. 803, 107 L. Ed. 2d 905 (1990) (quoting Taylor, 419 U.S. at 527) (emphasis in original). The representativeness requirement serves the goal of impartiality because it prevents the government from drawing up "jury lists in such manner as to produce a pool of prospective jurors disproportionately ill disposed towards one or all classes of defendants." *Id.* To establish a prima facie violation of the fair cross-section requirement, a petitioner must show (1) that the group under-represented is a distinctive group in the community, (2) that the under-representation in the venire is not fair and reasonable in relation to the group's number in the community, and (3) that this under-representation is due to systematic exclusion of the group from the selection process. Duren, 439 U.S. at 364.

Alternatively, discriminatory selection of a jury venire may also be challenged under the Equal Protection Clause of the Fourteenth Amendment. *See* Castaneda v. Partida, 430 U.S. 482, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977). To establish a prima facie claim for an equal protection violation, a petitioner must show (1) that he or she is a member of a group capable of being singled out for discriminatory treatment, (2) that members of this group were substantially under-represented

on the venire, and (3) that the venire was selected under a practice providing an opportunity for discrimination.  <u>Castaneda</u>, 430 U.S. at 494.  Although the prima facie case for an equal protection claim resembles the elements of a fair cross-section claim, the purpose of an equal protection claim is to determine whether the disparity in the jury venire is the result of a discriminatory purpose.  *See* <u>Duren</u>, 439 U.S. at 368 n.26.  Thus, whereas the inquiry in a fair cross-section claim focuses on the representativeness of the jury venire, the focus of an equal protection claim is whether members of a discrete group have been intentionally denied the opportunity to serve on a jury.  *Id.*  If the defendant makes his prima facie case, the burden shifts to the government to dispel the inference of intentional discrimination.  *See* <u>Castaneda</u>, 430 U.S. at 497–98.  If the government provides a legitimate explanation, the ultimate burden of proving discriminatory intent rests on the defendant challenging the jury selection process.  *See* <u>Batson v. Kentucky</u>, 476 U.S. 79, 93, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

Here, Petitioner failed to show a violation of either his fair cross-section right or his equal protection right, because he stated only in conclusory terms that the under-representation of African American persons on the panel resulted from a systematic exclusion in the selection process or from purposeful discrimination.  Although Petitioner alleged there was only one African American in the jury pool, he failed to show that this purported under-representation was systematic, and he offered no proof that the under-representation was unfair or unreasonable.  *See* <u>United States v. Tapia</u>, 59 F.3d 1137, 1142 (11th Cir. 1995) (rejecting defendant's contention that venire from which his petit jury was chosen was unconstitutionally composed because it contained too few African Americans, where defendant failed to present any evidence that purported under-representation was due to systematic exclusion from the selection process); <u>Berryhill v. Zant</u>, 858 F.2d 633, 638 (11th Cir. 1988) (defendant claiming fair cross-section violation must show that distinctive group is systematically excluded from the jury source); *see also, e.g.*, <u>United States v. Downs</u>, 217 F. App'x 841, 845 (11th Cir. 2006) (unpublished) (defendant failed to establish violation of Sixth Amendment right where he failed to show that exclusion of African Americans from jury pool was systematic and offered no proof that under-representation was unfair or unreasonable).  Moreover, Petitioner's equal protection claim fails because although he alleged that African Americans were under-represented on the venire, he made no allegation, let alone a showing, that the venire was selected

under a practice providing an opportunity for discrimination.  *See* <u>Cunningham v. Zant</u>, 928 F.2d 1006, 1014 n.9 (11th Cir. 1991); *see also, e.g.,* <u>Downs</u>, *supra* (defendant's equal protection claim failed, because he made no allegation, never mind a showing, that the venire was selected under a practice providing an opportunity for discrimination).  Therefore, Petitioner failed to show a meritorious claim with respect to his constitutional challenge to the jury panel.  Moreover, he has not made a colorable showing of actual innocence.  Therefore, he is not entitled to federal habeas relief on Ground Three.

## V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Michael D. Crews is substituted for Ken Tucker as Respondent.

And, it is respectfully **RECOMMENDED**:

1.     That the amended petition for writ of habeas corpus (doc. 8) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>17th</u> day of December 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).